UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MARVIN EDWARD WARE                    CIVIL ACTION NO. 07-cv-1705

VERSUS                                JUDGE WALTER

ANTHONY BATSON, ET AL                 MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Marvin Ware ("Plaintiff") is an inmate housed at the David Wade Correctional Center. He filed this civil action against several prison officials based on claims that: (1) he is exposed to excessive tobacco smoke; (2) he is not allowed to participate in a work release program; and (3) he is a Muslim but has been denied a non-pork diet and has been told that he may not sing in the choir. Defendants earlier filed a motion to dismiss, which was granted in part by dismissing all claims based on the alleged failure to afford Plaintiff eligibility for work release. There were no other claims against Heather Miles or Beth Florentine, so they were terminated as defendants. Docs. 45 and 52. The remaining defendants are Anthony Batson, Richard Pusch, Richard Stalder, George Savage, and the (unserved) State of Louisiana.

Plaintiff filed a Motion for Summary Judgment (Doc. 43), which is supported by a separate memorandum (Doc. 46). Plaintiff then filed what he called a Motion for Conformation of Summary Judgment (Doc. 56) with a separate supporting memorandum

(Doc. 57). The remaining served defendants responded with their own Motion for Summary Judgment (Doc. 58). It is recommended, for the reasons that follow, that Plaintiff's motions be denied and that Defendants' motion be granted.

**Summary Judgment Standard**

Summary judgment is proper when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. All facts and inferences must be construed in the light most favorable to the non-movant. Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008). But where the non-moving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist. McLaurin v. Noble Drilling (US) Inc., 529 F.3d 285, 288 (5th Cir. 2008).

**Exposure to Tobacco Smoke**

**A. The Allegations**

The court will first summarize Plaintiff's allegations, which were deemed adequate to survive lenient Rule 12(b)(6) review, followed by a discussion of the competent summary judgment evidence that has been offered to challenge those allegations. Plaintiff alleges that in early 2007 he arrived at Forcht Wade Correctional Center and was placed in the Alpha dorm, which allows smoking. He was moved that same night to Fox 1, which is supposed to be a non-smoking dorm. Plaintiff wrote Lt. Col. George Savage and asked why he had

been moved from a smoking dorm with good ventilation to a non-smoking dorm where over half the inmates smoke and there is not a good vent system. Savage did not respond.

Plaintiff alleges that more than half of the 39 inmates in the dorm smoke and that he spends at least 12 hours each day in lockdown with the inmates who smoke and who get upset and may retaliate if Plaintiff complains. When the yard is open, Plaintiff alleges, five or more inmates may sit in front of the building and smoke, and the smoke is drawn into the dorm. Plaintiff is subjected to smoke in the bleachers at the ball field, on the walks to and from meals, and when working in the kitchen. The smoke comes from staff members as well as fellow inmates.

Plaintiff alleges that he made a sick call in September 2007 because of headaches caused by the tobacco smoke. The medical staff told him that they did not know what to do for him. Plaintiff alleges that he wrote the warden but got no reply.[1] Plaintiff wrote Secretary Stalder in the form of a grievance about the smoke issue. A member of the Secretary's staff responded, but not to Plaintiff's satisfaction.

**B. Summary Judgment Record**

Plaintiff did not offer any affidavits or other summary judgment evidence in support of his motion or attached to his memorandum in opposition to Defendants' motion.

---

[1]Plaintiff alleges, "I tried writing the Warden, but I got no reply." Defendants, in an earlier memorandum, accepted that Plaintiff claims that he wrote the letter to Deputy Warden Anthony Batson, who is a named defendant. Warden Michael is not a named defendant. The court accepted Defendants' construction of this allegation as asserting that the letter was written to Deputy Warden Batson.

Defendants, on the other hand, have offered affidavit testimony from Deputy Warden Batson and Lt. Col. Savage. Lt. Col. Savage testifies that the Louisiana Smoke Free Air Act exempted correctional institutions from its provisions until August 15, 2009. Savage was responsible, during the 2007 time about which Plaintiff complains, for transitioning inmate housing units from smoking to non-smoking in anticipation of the August 15, 2009 deadline. Every quarter, he would change another housing unit to a non-smoking dorm.

Deputy Warden Batson testifies that he is the head prison administrator at the Forcht Wade facility, where Plaintiff arrived on February 6, 2007. Batson testifies that Plaintiff was first assigned to the Alpha dorm, which was a smoking dorm at that time. On February 8, the classification board reassigned Plaintiff from Alpha to Foxtrot (or Fox) 1, which was a non-smoking dorm at that time. Batson states that an inmate is usually transferred from a smoking to a non-smoking dorm upon the inmate's request and he concludes that Plaintiff would not have been transferred unless he made a request. Plaintiff quibbles with whether he was reassigned on the day he arrived rather than two days later, and he denies that he made a request, but it is undisputed that the transfer was made. Plaintiff alleges that the smoking dorm had better ventilation but, presumably, Plaintiff does not contend that prison officials should have left him in the smoking dorm.

Batson testifies that Inmate Posted Policy #2 in effect during 2007 permitted Foxtrot 1 inmates who smoked to possess smoking materials but prohibited smoking inside the housing unit or on the tier. Inmates were permitted to smoke outside of the housing unit.

Smoking inside the unit was a violation of the policy that was actionable under the disciplinary rules. Batson testifies that Foxtrot 1 was located in the general population area in 2007. A review of records indicates that 16 inmates were written up for smoking in 2007 in the general population dormitories, and there is no indication that Plaintiff was exposed to smoke during those incidents.

Batson testifies that Employee Policy Memorandum #01-01-025 prohibited Forcht Wade employees from smoking indoors in 2007 unless they had a private and enclosed office. Violations of the smoking policy by prison employees could lead to personnel action, and Batson testifies that he personally counseled several employees with regard to their smoking practices. He denies any indication that Plaintiff was exposed to tobacco smoke during any of those incidents.

Plaintiff alleged that he was exposed to tobacco smoke when he was in the bleachers at the ballfield, on walks to and from meals, and working in the kitchen. Deputy Warden Batson testifies that Inmate Posted Policy #2, in effect in 2007, prohibited inmates from smoking in the food preparation area, food storage area, food lockers, and the dining hall area of the institution. Inmates were also prohibited from smoking in the warehouses, chapels, library, gym, medical building, and educational buildings. However, the policy did permit smoking in areas such as the bleachers at the ballfield and in the open areas that Plaintiff might encounter when walking to and from the dining halls. Smoking in the open yard was not a violation of the policy.

Deputy Warden Batson testifies that, contrary to Plaintiff's allegation, that (to the best of his knowledge) he did not receive any written communication from Plaintiff alleging that he had been exposed to tobacco smoke. Batson specifically denies that he had knowledge of Plaintiff being exposed to smoke at any time prior to the filing of this lawsuit.

Lt. Col. Savage testifies that, to the best of his knowledge, he did not receive any written communication from Plaintiff (as alleged in the complaint) asking why Plaintiff had been moved from a smoking dorm with good ventilation to a non-smoking dorm where over half the inmates smoked and there was not a good vent system. Savage does recall that he and Plaintiff had a conversation about the dorm change. Plaintiff asked why he was moved, and Savage responded that it was because Plaintiff had requested a move to a non-smoking dorm. Savage denies that Plaintiff, during the conversation, complained of the vent system in the new dorm or of inmates smoking in the new dorm. Furthermore, Plaintiff did not ask to be moved to another dorm. Savage testifies that he did not have any knowledge of Plaintiff being exposed to tobacco smoke after Plaintiff was transferred to Foxtrot 1, the non-smoking dorm.

**C. Analysis**

The Supreme Court has applied a two-prong test to determine whether exposure to second-hand smoke violates a prisoner's Eighth Amendment right. First, the prisoner must show that he is being exposed to unreasonably high levels of environmental tobacco smoke. Helling v. McKinney, 113 S.Ct. 2475, 2482 (1993). In assessing that factor, the court must

Deputy Warden Batson testifies that, contrary to Plaintiff's allegation, that (to the best of his knowledge) he did not receive any written communication from Plaintiff alleging that he had been exposed to tobacco smoke. Batson specifically denies that he had knowledge of Plaintiff being exposed to smoke at any time prior to the filing of this lawsuit.

Lt. Col. Savage testifies that, to the best of his knowledge, he did not receive any written communication from Plaintiff (as alleged in the complaint) asking why Plaintiff had been moved from a smoking dorm with good ventilation to a non-smoking dorm where over half the inmates smoked and there was not a good vent system. Savage does recall that he and Plaintiff had a conversation about the dorm change. Plaintiff asked why he was moved, and Savage responded that it was because Plaintiff had requested a move to a non-smoking dorm. Savage denies that Plaintiff, during the conversation, complained of the vent system in the new dorm or of inmates smoking in the new dorm. Furthermore, Plaintiff did not ask to be moved to another dorm. Savage testifies that he did not have any knowledge of Plaintiff being exposed to tobacco smoke after Plaintiff was transferred to Foxtrot 1, the non-smoking dorm.

**C. Analysis**

The Supreme Court has applied a two-prong test to determine whether exposure to second-hand smoke violates a prisoner's Eighth Amendment right. First, the prisoner must show that he is being exposed to unreasonably high levels of environmental tobacco smoke. Helling v. McKinney, 113 S.Ct. 2475, 2482 (1993). In assessing that factor, the court must

conduct an inquiry into the seriousness of the potential harm and the likelihood that the smoke will actually cause such harm. Id. The court also has to determine whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. Id. Second, the prisoner must show that prison authorities demonstrated a deliberate indifference to his plight. Id.

With respect to the first prong, one judge has taken judicial notice of a June 2006 Surgeon General's report that concluded that there is no safe level of exposure to second-hand smoke. See Murrell v. Casterline, 2008 WL 822237 (5th Cir. 2008) (vacating a defense summary judgment in a prisoner tobacco smoke case). And certainly daily and heavy exposure to high levels of smoke may satisfy the first prong of Helling. See Murrell v. Chandler, 2008 WL 1924198 (5th Cir. 2008) (vacating dismissal of prisoner smoke case where inmate alleged daily exposure in his housing unit and his work area). On the other hand, the Fifth Circuit has affirmed a dismissal based on the first prong where an inmate alleged that during bus rides he was subjected to intermittent exposure that caused coughing and nausea. This "sporadic and fleeting exposure" was deemed insufficient to trigger Helling. Richardson v. Spurlock, 260 F.3d 495 (5th Cir. 2001).

Plaintiff alleges in his unsworn memoranda and other submissions that inmates routinely violated the smoking regulations so that he was frequently subjected to smoke inside the dorm. Unsworn memoranda, however, are not competent summary judgment evidence. Larry v. White, 929 F.2d 206, 211 n.12 (5th Cir. 1991). The competent summary

judgment evidence submitted by Batson and Savage suggests that Plaintiff is exposed to smoke only in outdoor settings or when an inmate or employee is smoking in violation of policy, which they testify is enforced. Plaintiff has not, based on the summary judgment record, created a genuine issue of material fact with respect to the first prong of Helling. His exposure to smoke outside the unit was no more than encountered by a typical downtown office worker who exits a building and walks down a sidewalk. That exposure may be annoying and even unhealthy, but society has not yet decided that it poses a risk so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.

Plaintiff has also failed to establish a genuine issue of material fact with respect to the second prong of Helling, whether Batson or Savage acted with deliberate indifference. The adoption of a smoking policy will "bear heavily on the inquiry into deliberate indifference." Helling, 113 S.Ct. at 2482. Batson and Savage testified that Plaintiff was housed in a non-smoking dorm, they were not aware of any complaints that Plaintiff was exposed to unwanted tobacco smoke, and they each testified that the rather detailed smoking policies (attached to the affidavits) for inmates and employees were enforced. This record does not give rise to a genuine issue of material fact as to whether any defendant acted with deliberate indifference with regard to Plaintiff's alleged exposure to tobacco smoke. Summary judgment for defendants is warranted with respect to the tobacco smoke claims.

**Religious Claims**

Plaintiff alleged in his complaint that Defendant Richard Pusch has the authority to give him a non-pork card that will allow him to receive meals consistent with Plaintiff's Muslim religion. Plaintiff alleged that Pusch has refused Plaintiff's request since Plaintiff has been on the compound, despite Plaintiff's attempts to talk with Pusch about the issue. Plaintiff also alleged that Pusch instructed that Plaintiff was not to sing in the choirs because "Muslim should hang with Muslim, and Christian should hang together."

Plaintiff's allegations were deemed adequate to survive Rule 12(b)(6) review, but they have now been directly challenged by competent summary judgment evidence in the form of affidavits from Reverend Father Richard Pusch and Col. Walter Toliver. Pusch testifies that he has been employed as an assistant chaplain at Forcht Wade since 2000. He explains that Inmate Posted Policy #59, "Religious Diets," informs the inmate population as to what is required to have a special diet based on religious beliefs. The policy requires that an inmate who makes a request complete a Religious Dietary Request Form and send it to the chaplain for review. Pusch testifies that there is no record that Plaintiff ever submitted the request form for a non-pork diet. There is also no record that Plaintiff took the Kalima Shahada (or declaration of faith)[2] that is required for any inmate who requests a non-pork diet

---

[2] The Shahada is the Muslim declaration of belief in the oneness of God and acceptance of Muhammad as a prophet. It is often translated in English as, "There is no god but God, Muhammad is the Messenger of God." This declaration is called the Kalimah, which means "words." Non-Muslims wishing to convert to Islam do so by a public recitation of the creed. <http://en.wikipedia.org/wiki/Shahada>;

on the basis of the Muslim faith. The declaration was prepared and approved by leaders of the Muslim community.

Reverend Pusch testifies that prison records show that Plaintiff attended Muslim services in February, March, and December of 2007, but Plaintiff attended Christian services in February, May, June, July, and August. In 2008, Plaintiff attended Christian services in April and May, but there is no record he attended any Muslim service in 2008.

Reverend Pusch testifies that he met with Plaintiff on a number of occasions between February and May 2007 about Plaintiff's religion. The first visit was about Plaintiff's claim to be Muslim, while attending both Muslim and Christian services. Pusch's impression as a spiritual advisor was that Plaintiff seemed to be unsure as to which faith he wanted to follow.

Reverend Pusch met with Plaintiff again several days later, this time in the presence of Col. Toliver, in response to a letter from Plaintiff in which Plaintiff requested a non-pork diet card. Prison records indicated that Plaintiff's religion was non-denominational. Pusch is familiar with the Muslim faith through reading material, interaction with the Muslim community, experience as an Air Force chaplain in Turkey, and learning from a local Muslim teacher. Based on Pusch's reading of a book regarding the Qur'an, he understood that an individual of the Muslim faith should not participate in Christian activities such as singing in the Christian choir to praise Jesus, because the tenets of the Muslim faith require worship

---

<http://convertingtoislam.com/shahada.html>.

of Allah as the one and only god of the Muslim faith. Pusch expressed to Plaintiff that he should not be singing in a Christian choir. He added that a non-pork diet was not available because Plaintiff had not made a Muslim declaration of faith and did not regularly attend Muslim services. Pusch testifies that he did not, however, stop Plaintiff from participating in the Christian choir. In fact, prison records show that Plaintiff continued to participate in the choir on several occasions after this meeting.

Another meeting was held regarding the non-pork diet, and Plaintiff was told that he must complete the Muslim declaration of faith. At the final meeting recalled by Reverend Pusch, he spoke to Plaintiff again about Plaintiff's continuing claim to be a Muslim while also participating in Christian activities. Pusch testifies that, as a spiritual advisor, he attempted to help Plaintiff resolve his religious conflict as to who was his god. Pusch denies that he was ever angry or hostile with Plaintiff or that he addressed Plaintiff's religious concerns in a discriminatory manner. Col. Toliver, in his affidavit, generally corroborates Reverend Pusch's account of the meeting that Toliver attended.

Plaintiff states in his (unsworn) memorandum in opposition that after reading Reverend Pusch's affidavit he approached Pusch and asked about the Religious Dietary Request Form, which Plaintiff said he had never heard of. The two men went to Col. Toliver's office, where Plaintiff signed the request form. Plaintiff reports that he is now receiving a non-pork diet and is allowed to participate in Ramadan. Rather than being

satisfied, however, Plaintiff argues that this is somehow evidence of Pusch's "guilt in this civil action suit."

Lengthy legal analysis is not necessary to determine that Reverend Pusch (and all other defendants) are entitled to summary judgment with respect to the religious claims. All of the competent summary judgment evidence depicts Reverend Pusch acting in a rational manner as spiritual advisor, advising Plaintiff that he must first make an affirmation of faith to receive the special religious diet he sought. "[P]rison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." Cutter v. Wilkinson, 125 S.Ct. 2113, 2124 n. 13 (2005) (RLUIPA case). In the First Amendment context, the Court has similarly stated that "to have the protection of the Religion Clauses, the claims must be rooted in religious belief" rather than philosophical, health, or other personal reasons. Wisconsin v. Yoder, 92 S.Ct. 1526, 1533 (1972). Thus, "[a] jail should accommodate an inmate's religious dietary restrictions, subject to budgetary and logistical limitations, but only when the belief is 'truly held.'" Hathcock v. Cohen, 2008 WL 2816072, * 6 (11th Cir. 2008). Pusch reasonably required Plaintiff to make an affirmation of his faith before he could receive a special religious diet.

Pusch also did not run afoul of the First Amendment when he counseled Plaintiff (but did not prohibit any actions) with regard to Plaintiff's worship activities. Pusch did not ban Plaintiff from participating in the Christian choir, and the record shows that Plaintiff continued to so participate after the counseling session.

**State of Louisiana**

Plaintiff named as a defendant the State of Louisiana, which has not been served. There is no basis for liability against any of the state officials, so there is no possibility of imposing liability on the state. Furthermore, the state has Eleventh Amendment immunity from claims brought under 42 U.S.C. § 1983 in federal court. See <u>Champagne v. Jefferson Parish Sheriff's Office</u>, 188 F.3d 312 (5th Cir. 1999). All claims against the State should be dismissed.

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 43) and Motion for Conformation of Summary Judgment (Doc. 56) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 58) be **granted** and that all claims against all remaining defendants be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of November, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE